Eric H. Gibbs (State Bar No. 178658)
ehg@girardgibbs.com
Dylan Hughes (State Bar No. 209113)
Geoffrey A. Munroe (State Bar No. 228590)
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, California 94104
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

Steven N. Berk (*pro hac vice*)
steven@berklawdc.com
Michael Lewis (*pro hac vice*)
**BERK LAW PLLC**
1225 Fifteenth St. NW
Washington, DC 20005
Phone: (202) 232-7550
Facsimile: (202) 232-7556

Attorneys for Individual and Representative
Plaintiffs Vanessa Browne and Paul Moore

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VANESSA BROWNE and PAUL MOORE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN HONDA MOTOR CO., INC.,<br><br>Defendant. | Case No.  CV 09-06750-MMM(DTBx)<br><br>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT**<br><br>Date:     May 17, 2010<br>Time:     10:00 a.m.<br>Before:  Hon. Margaret M. Morrow |

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   INTRODUCTION ................................................................1

II.  SUMMARY OF THE LITIGATION AND SETTLEMENT ....................................3

    A.   Plaintiffs' Complaint.............................................................3

    B.   Discovery and Settlement Negotiations............................................4

    C.   Terms of the Settlement ..........................................................5

        1.   The Settlement Class .....................................................5

        2.   Improved Brake Pads .....................................................6

        3.   Reimbursements For Installing The Improved Brake Pads.................6

        4.   Reimbursements For Past Brake Pad Replacements ...........................7

        5.   A Speedy, Consumer-Friendly Claims Process................................7

        6.   Class Notice ...............................................................8

        7.   Dealer Education Program................................................8

        8.   Attorneys' Fees and Expenses ..............................................9

        9.   Mutual Release...........................................................9

III. ARGUMENT....................................................................9

    A.   Overview Of The Class Action Settlement Process ...............................9

    B.   The Settlement Should Be Preliminarily Approved .....................................10

        1.   The Role Of Preliminary Approval ....................................10

        2.   The Proposed Settlement Merits Preliminary Approval. ...................11

i

C.   The Proposed Settlement Class Should Be Certified For Settlement Purposes ..................................................................................... 12

1.   The Proposed Settlement Class Meets The Requirements Of Rule 23(a). ........................................................................... 12

2.   The Proposed Settlement Class Meets The Requirements Of Rule 23(b)(3). ......................................................................... 13

D.   The Court Should Order Dissemination Of The Proposed Class Notice ...... 14

1.   The Agreement Provides For The Best Notice Practicable Under The Circumstances. ........................................................ 14

2.   The Proposed Form Of Notice Adequately Informs Class Members Of Their Rights In This Litigation. ................................. 15

3.   Notice Of The Settlement Will Be Provided To Appropriate Federal And State Officials. ............................................... 15

E.   The Court Should Set A Schedule For Final Approval ................................. 15

IV.   CONCLUSION ....................................................................................... 16

ii

TABLE OF CONTENTS

# TABLE OF AUTHORITIES

**Case**                                                             **Page**

*Acosta v. Trans Union,*
    243 F.R.D. 377 (C.D. Cal. 2007) ................................................................. 10

*Amchem Prods. v. Windsor,*
    521 U.S. 591 (1997) ................................................................. 12, 14

*Chamberlan v. Ford Motor Co.,*
    223 F.R.D. 524 (N.D. Cal. 2004) ................................................................. 13, 14

*Chun-Hoon v. McKee Foods Corp.,*
    No. C 05-0620, 2009 WL 3349549 (N.D. Cal. Oct. 15, 2009) .............................. 11

*Daffin v. Ford Motor Co.,*
    458 F.3d 549 (6th Cir. 2006) ................................................................. 14

*Daugherty v. American Honda Motor Co.,*
    144 Cal. App. 4th 824 (2006). ................................................................. 12

*Dukes v. Wal-Mart, Inc.,*
    509 F.3d 1168 (9th Cir. 2007) ................................................................. 13

*Gribble v. Cool Transports Inc.,*
    No. CV 06-04863, 2008 WL 5281665 (C.D. Cal. Dec. 15, 2008) ......................... 11

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998). ................................................................. 12, 13, 14

*In re M.L. Stern Overtime Litigation,*
    2009 WL 995864 (S.D. Cal. 2009) ................................................................. 10

*In re Sony SXRD Rear Projection TV Class Action Litig.,*
    No. 06 Civ. 5173, 2008 U.S. Dist. LEXIS 36093 (S.D.N.Y. May 1, 2008) ........... 13

*Mullane v. C. Hanover Bank & Trust,*
    339 U.S. 306 (1950) ................................................................. 14

*Parkinson v. Hyundai Motor America, Inc.*,
   258 F.R.D. 580 (C.D. Cal. 2008) ................................................................ 14

*Silber v. Mabon*,
   18 F.3d 1449 (9th Cir. 1994) .................................................................... 14


## **Statutes**

Class Action Fairness Act, 28 U.S.C. § 1715 ................................................ 15

FED R. CIV. P. 23 ......................................................... 9, 12, 13, 14, 15

Rule 23(a) .......................................................................................... 13


## **Miscellaneous**

4 Newberg, *supra*. ................................................................................ 11

Manual for Complex Litigation, (4th Ed. 2004) ............................ 2, 10, 11, 12

TABLE OF AUTHORITIES

## I.     <u>INTRODUCTION</u>

Plaintiffs Vanessa Browne and Paul Moore each purchased a 2008 Honda Accord equipped with a newly designed braking system.  Less than a year later, after 15,000-20,000 miles of driving, they found that their Accord's rear brake pads had worn out and needed to be replaced.  An investigation by Plaintiffs' counsel turned up hundreds of Honda Accord and Acura TSX owners with similar experiences and led Plaintiffs to file the class action now pending before this Court.

Based on a review of approximately 850 complaints to Plaintiffs' counsel, the National Traffic Safety Administration (NHTSA), and other sources, as well as detailed interviews with over 50 class members, Plaintiffs' counsel understand the class' concerns with their vehicles.  <u>First</u>, class members are confused as to why their rear brake pads are wearing out prematurely and need replacing.  The confusion stems from advice from automotive technicians that conflict with their own experience, which is that typically rear brake pads do not wear on a new vehicle at such low mileage.  <u>Second</u>, class members are frustrated by the unanticipated repair costs and the belief that they will have to continue to pay for premature brake pad replacement over the life of the vehicle.

Plaintiffs are pleased to report that they have reached a settlement with Honda that squarely addresses the class' concerns, and perhaps most importantly, does so sooner rather than later.  The settlement features the following relief:

<u>Replacement and Reimbursement For New and Better Brake Pads</u>:  American Honda Motor Co., Inc., ("Honda") will reimburse class members up to $150 toward the cost of installing newly-developed, longer-lasting brake pads.

<u>Reimbursement For Past Repairs</u>:  Honda will reimburse class members half the cost (up to $125 per repair) of all of their past brake pad replacements.  These payments in effect compensate class members for the premature wear of the existing brake pad, which required "extra" brake pad replacements.

<u>A Speedy Claims Process</u>:  Class members can submit claims for reimbursements through a consumer-friendly process that provides for payment within 10 days.

1

<u>Class Member Notification</u>:  Honda will pay to notify class members of the settlement by first class mail, which among other things, will inform class members that premature brake pad wear is not a safety-related issue and can be addressed through the settlement benefits.

<u>Dealer Education</u>:  Honda will issue a service bulletin to Honda dealers and service technicians, which will help ensure that brake pad replacements do not include unnecessary rotor resurfacing and that class members receive uniform information about the settlement.

<u>Attorneys' Fees</u>:  The time and expense incurred by Plaintiffs' counsel to secure the relief on behalf of the class will be paid by Honda, separate from the benefits to the class.

Plaintiffs and their counsel believe that the settlement provides exemplary relief to class members in a timely manner and therefore seek to begin the settlement approval process outlined in the Manual for Complex Litigation (Fourth), §§ 21.632-35.  They respectfully request that the Court review the parties' Settlement Agreement, attached to the accompanying declaration of Eric H. Gibbs as Exhibit 1 (and cited herein simply as the "Agreement"), and enter an order:

1.   Granting preliminary approval of the proposed settlement;

2.   Certifying the proposed settlement class, as defined in paragraph (I)(8) of the Agreement.

3.   Appointing Ms. Brown and Mr. Moore as Class Representatives and their counsel, the law firms of Girard Gibbs LLP and Berk Law PLLC, as Class Counsel;

4.   Directing that notice be given to Class Members as proposed, including direct mailed notice to all class members reasonably identifiable by Honda; and

5.   Setting a hearing date and briefing schedule for final settlement approval and Plaintiffs' fee and expense application.

2

## II.   SUMMARY OF THE LITIGATION AND SETTLEMENT

### A.   Plaintiffs' Complaint

Plaintiffs filed their initial complaint in September 2009 and the currently operative First Amended Class Action Complaint ("FAC") in January 2010, which enlarged the proposed class to cover some 2010 Honda Accords and Acura TSX vehicles, all 2009 Acura TSX vehicles, in addition to all 2008-2009 Honda Accords. (Gibbs Decl., ¶ 3.)

Plaintiffs allege that the braking systems used in class vehicles are defective, causing excessive force to be applied to the rear brakes, which in turn leads to rapid and premature deterioration of the rear brake pads.  (FAC, ¶¶ 1, 15.)  One consequence of this defect is that some class vehicles require rear brake pad replacements about every 15,000 to 20,000 miles, far more frequently than in a properly functioning braking system.  (*Id.*)  In over 200 consumer complaints lodged with NHTSA, as well as in hundreds more sent to Plaintiffs' counsel or posted on the internet, class members have expressed confusion as to why their rear break pads need replacing so frequently, frustration that Honda is not addressing the problem and that they will apparently have to pay for brake pad replacements every 15,000-20,000 miles, and concern over possible safety implications.  (*See* FAC, ¶¶ 17-22; Gibbs Decl., ¶ 7.)  Based on their subsequent investigation, Plaintiffs do not believe that the premature brake wear at issue in this case does not present a safety concern.  (*See* Gibbs Decl., ¶ 7.)

On behalf of the proposed class of vehicle owners with the same braking system, Plaintiffs sought recovery from Honda for breach of its express warranties and for violation of California's consumer protection laws.  (*See* FAC, ¶¶ 44-79.)  Among other things, Plaintiffs requested that Honda reimburse class members for excessive rear brake pad replacements and remedy the braking system defect through a fix or monetary compensation for loss of value and future maintenance costs.  (*See id.*, ¶¶ 61, 78; *see also* Gibbs Decl., Ex. 2 (CLRA demand for relief).)

1

**B.**   **Discovery and Settlement Negotiations**

2

As Plaintiffs' counsel spoke with class members and reviewed their complaints,

3

two considerations came to the fore:  the benefit of early relief on the one hand, and the

4

need to negotiate comprehensive, consumer-friendly relief on the other.  (Gibbs Decl., ¶

5

5.)  The longer class members would have to wait for relief, the more likely – indeed

6

certain – they would require replacement of the older brake pads.  (*Id.*)  The result would

7

be significant out of pocket expenses, which would increase the class' monetary loss as

8

well as class members' level of confusion and frustration.  (*Id.*)  However, an early

9

resolution would in effect cap the class' losses and alleviate consumer confusion.  (*Id.*)

10

At the same time, many class members had already incurred hundreds of dollars of

11

expenses to replace their brake pads, sometimes on several occasions, and were adamant

12

that they should be compensated.  So while class members wanted quick answers and a

13

fix, they also wanted the type of reimbursements that cannot typically be achieved

14

through an early resolution.  (*Id.*)

15

To its credit, Honda recognized the benefit to its customers of early relief and

16

worked closely with Plaintiffs' counsel over the course of several months to fast-track

17

the discovery process and negotiations over possible class-wide relief.  (Gibbs Decl., ¶

18

6.)  The parties met several times in October 2009, which included frank discussions

19

between Plaintiffs' experts and Honda engineers and led to further exchanges of

20

information, depositions of Honda representatives, and frequent conversations

21

throughout the fall of 2009 regarding appropriate class-wide relief throughout October,

22

November, and December.  (*Id.*)

23

The focus of Plaintiffs' counsel throughout this period was on both prospective

24

and retrospective relief.  Plaintiffs' counsel worked closely with two independent experts

25

to ascertain whether the braking  system presents a safety issue (it does not) and to

26

ensure that Honda's proposals for how to address class members' brake pad wear made

27

technical sense and would be effective for different types and patterns of driving, and

28

that the remedy would be applied fairly throughout the class.  (Gibbs Decl., ¶7.)  In

4

addition, Plaintiffs' counsel worked to negotiate meaningful monetary relief for past and upcoming brake pad replacements that they attributed to the excessive wear.  (*Id.*)  This involved conducting surveys of a variety of consumers and repair facilities to determine the frequency and cost of class members' "extra" brake pad replacements, and then securing appropriate compensation from Honda.  (*Id.*)  It also involved designing a process to ensure settlement benefits reach as many class members as possible.  (*Id.*)  A total or near-total settlement recovery would mean little if only a small fraction of the class participated in the settlement.  (*Id.*)  As part of this process, the parties ultimately attended a voluntary mediation session with the Court on November 18, 2009.  (*Id.*)  With the Court's assistance, the parties were able to agree on a speedy and consumer-friendly notice and reimbursement program that will encourage class participation in the settlement.  (*Id.*)

The parties had reached agreement on the terms of a class-wide settlement by late December 2009, but the following month, Honda raised the prospect of a new and different fix for the problem that it had succeeded in developing and believed would be more effective.  (Gibbs Decl., ¶ 8.)  Plaintiffs' counsel again worked with their experts and used an expedited discovery process to verify that this fix, which involved the installation of more resilient brake pads, would indeed be more beneficial to class members, as well as easier to implement across the entire class.  (*Id.*)

The final class-wide relief provided by the parties' settlement was ultimately made possible by both parties' willingness to participate in an intense period of discovery and settlement negotiations.  (*Id.*)  Discovery was pursued and comprehensive settlement terms negotiated far faster than would typically be the case precisely because the class would benefit most from that approach.  (*Id.*)

C.    **Terms of the Settlement**

1.    **The Settlement Class**

The parties' agreement provides benefits to a class defined as "All residents of the United States, Commonwealth of Puerto Rico, U.S. Virgin Islands, and Guam who

currently own or lease, or previously owned or leased, a Class Vehicle." (Agreement (I)(5); *see also id.* at 2.)

Class Vehicles are, in turn, defined to include the following automobiles sold or leased in the United States, Commonwealth of Puerto Rico, U.S. Virgin Islands, or Guam:

(a)     2008 and 2009 model year Honda Accord automobiles;

(b)     2009 model year Acura TSX automobiles;

(c)     Certain 2010 model year Honda Accord automobiles;[1] and

(d)     Certain 2010 model year Acura TSX automobiles.

The class definition thus encompasses about 750,000 vehicles, all of which use the braking system at issue in the litigation.

### 2.     Improved Brake Pads

Starting around September 2010 or earlier, Honda will provide repair facilities with improved rear brake pads for use in the class vehicles. (*See* Agreement (I)(23).) Based on Honda's testing data, which have been reviewed by Plaintiffs' experts, these newly designed brake pads are expected to last at least as long as the brake pads in 2003-2007 Honda Accords (the preceding generation of vehicles). (Gibbs Decl., ¶ 8.) So when class members next take their cars in for rear brake pad replacements, they will receive the improved rear brake pads, and will no longer have to replace their rear brake pads nearly as often as before.

### 3.     Reimbursements For Installing The Improved Brake Pads

Under the proposed settlement, Honda will offer class members up to a $150 reimbursement toward the cost of replacing their existing brake pads with the improved brake pads (or 100% of the cost, whichever is less). (Agreement (III)(A)(2).) The national average for rear brake pad replacements is about $150, so class members can, in effect, receive a free (or almost free) rear brake pad replacement that also will ensure that

---

[1] Plaintiffs' counsel and counsel for Honda jointly maintain a list of the effected 2010 Honda Accord and 2010 Acura TSX automobiles.

MEMORANDUM IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS SETTLEMENT
CASE NO. CV 09-06750-MMM(DTBx)

future brake replacements will not be nearly as frequent.

Class members will have 3 years from the vehicle's original purchase/lease date to take their car to a repair facility for the reimbursable rear brake pad replacement (or 90 days from the Final Approval Date, whichever is longer).  (Agreement (I)(2), (III)(A)(3).)  In addition, if class members prefer to replace their rear brake pads by themselves, they can still recover 100% of the cost of the improved brake pads, which will have a suggested retail price of $66.66, and Honda's price to dealers will not increase more than five percent for each of the next two years.  (*Id.*, III(2), (3).)

### 4.    Reimbursements For Past Brake Pad Replacements

To compensate class members for the "extra" rear brake pad replacements they incurred because of premature wear, the settlement also offers class members a reimbursement of 50% of their out-of-pocket costs for past brake pad replacements (up to a maximum of $125 per repair).  (Agreement (III)(A)(1).)  A class members' reimbursable out-of-pocket expenses includes associated expenses such as rotor resurfacing, which some repair facilities performed as part of a rear brake pad replacement.  ((*See id.*, (I)(26), (31).)  So if a class member paid $200 for rear brake pad replacement with rotor resurfacing, he or she would be eligible for a $100 reimbursement.

The settlement places no cap or limit on the number of past rear brake pad replacements for which a class member may seek reimbursement during the three year reimbursement period, and reimbursement is allowed regardless of whether the repairs were performed at a independent Honda dealer, at an independent repair facility, or by the class member.  (*Id.*, (III)(A)(1).)

### 5.    A Speedy, Consumer-Friendly Claims Process

The process by which class members may seek their reimbursements is designed to be fast and convenient.  The claim form requires only that a class member write how many times they paid for repairs or replacement parts, include a copy of a receipt (or similar documentation) for each repair, sign and date a short certification, and mail the

7

claim form to the Claims Administrator.  (*See* Gibbs Decl., Ex. 1—A-2.)  Class members will have 90 days after the date of their repair or the date the settlement becomes effective, whichever is later, to submit their claim for reimbursement, and they can use a single claim form for all reimbursements or use separate claim forms.  (*See* Agreement (III)(1), (3).)

Within 10 days of receiving a claim for reimbursement, the Claims Administrator is required to either (i) send the class member his or her reimbursements, or (ii) send the class member a written explanation for denial of the claim with instructions on how to cure the deficiencies.  (*Id.*, (V)(B).)  If a class member's claim is ultimately found invalid and uncured, the class member will have an opportunity to seek review by a Better Business Bureau arbitrator at Honda's expense.  (*Id.* at III(C), V(C).)

### 6.    Class Notice

Class members will be notified by mail of the settlement and their opportunity to request reimbursements for all past and one future rear brake pad replacements. (Agreement (IV)(A)(1).)  The notice will, among other things, explain to concerned class members that the premature rear brake pad does not pose a safety threat, explain how class members can obtain reimbursements under the settlement, and will include a reminder that class members can put in their glove box.  (*See* Gibbs Decl., Ex. 1—A-1.)

A Settlement website will also be available to class members and will include instructions on how to obtain reimbursements, print out a claim form or glove box reminder, or contact the Claims Administrator, Class Counsel, or Honda for assistance. (*See* Agreement (IV)(A)(2).)

### 7.    Dealer Education Program

As part of the settlement, Honda will implement an information program that will be sent to Honda and Acura dealerships and will be available to independent repair facilities through service update providers.  (*See* Agreement (B)(1), (3).)  This service bulletin will discourage unnecessary rotor resurfacing in connection with future rear brake pad replacements, and will also help ensure that consumers receive uniform

8

information about the rear braking system issue and settlement.  (*See id.*)

### 8.     Attorneys' Fees and Expenses

The time and expense incurred by Plaintiffs' counsel to secure the relief on behalf of the class will be paid entirely by Honda, and will not in any way reduce the benefits available to class members under the settlement.  (Agreement (IX)(B).)

After the parties had reached agreement on relief for the class, thus giving rise to a claim for attorneys' fees under California's public-benefit statutes, the parties enlisted the assistance of Judge Edward A. Infante (Ret.) to help resolve that claim.  (Gibbs Decl., ¶ 9.)  After a day-long mediation on February 10, 2010, Honda agreed to pay, subject to Court approval, the sum not to exceed $2,000,000 for attorneys' fees and litigation expenses.  (Agreement (IX)(B); Gibbs Decl., ¶ 9.)  Honda has also agreed to pay incentive awards (also subject to Court approval) not to exceed $1,000 to both Ms. Browne and Mr. Moore in recognition of their initiative and time spent pursuing this action on behalf of similarly situated consumers.  (*Id.*)

### 9.     Mutual Release

In exchange for the Class benefits provided by Honda under the proposed settlement, Plaintiffs and Class Members will release Honda and all related entities from all claims that relate to the Class Vehicles' rear braking system as alleged in the complaint, with the exception of claims for personal injury, property damage, and subrogation.  (Agreement (VIII)(A)-(B).)  Likewise, Honda will release the Class Representatives, and Plaintiffs' counsel from any claims related to this litigation or settlement.  (Agreement (VIII)(C).)

## III.   ARGUMENT

### A.   Overview Of The Class Action Settlement Process

A class action settlement like the one proposed here must be approved by the Court to be effective.  *See* Fed. R. Civ. Proc. 23(e).  The process of court approval is comprised of three principal steps:

1.     A preliminary approval hearing, at which the court considers whether the

9

1         proposed settlement is within the range of reasonableness possibly meriting

2         final approval;

3    2.     Class members are notified of the proposed settlement and given an

4         opportunity to express any objections;

5    3.     A "formal fairness hearing," or final approval hearing, at which the Court

6         decides whether the proposed settlement should be approved as fair,

7         adequate, and reasonable to the class.

8 *See* Manual for Complex Litigation (Fourth) §§ 21.632-34 (2004).

9      By this motion, the Plaintiffs ask the Court to take the first step in the settlement

10 approval process and grant preliminary approval of the settlement.  Plaintiffs further

11 request that the Court provisionally certify the Class set forth in the Agreement, appoint

12 Plaintiffs as Class Representatives and their attorneys Class Counsel, order dissemination

13 of notice to Class Members, and establish a schedule for the final approval process.

14      **B.**    **The Settlement Should Be Preliminarily Approved**

15          **1.**    **The Role Of Preliminary Approval**

16      At the final approval stage, after the Class Members have been notified of the

17 proposed settlement and had an opportunity to comment, the Court will be called upon to

18 determine whether the parties have negotiated a settlement that is fair, reasonable, and

19 adequate to the Class.  At this preliminary approval stage, however, the Court determines

20 only whether the settlement falls "within the range of possible approval, such that there

21 is any reason to notify the class members of the proposed settlement and to proceed with

22 a fairness hearing."  *See In re M.L. Stern Overtime Litigation,* 2009 WL 995864, *3

23 (S.D. Cal. 2009) (internal quotation marks omitted); *Acosta v. Trans Union,* 243 F.R.D.

24 377, 386 (C.D. Cal. 2007) ("To determine whether preliminary approval is appropriate,

25 the settlement need only be *potentially fair*, as the Court will make a final determination

26 of its adequacy at the hearing on Final Approval, after such time as any party has had a

27 chance to object and/or opt out.").

28      "[I]f the proposed settlement appears to be the product of serious, informed, non-

collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing." *Chun-Hoon v. McKee Foods Corp.*, No. C 05-0620, 2009 WL 3349549, *2 (N.D. Cal. Oct. 15, 2009). In other words, the Court makes only a preliminary determination of the settlement's fairness, reasonableness, and adequacy, pointing out any settlement terms that are so unacceptable at the outset that a formal fairness hearing would be a waste of time. *See* Manual for Complex Litigation, § 21.632; 4 Newberg, *supra*, § 11.25.

### 2. The Proposed Settlement Merits Preliminary Approval.

The proposed settlement in this case is well within the range of reasonableness that would merit judicial approval. The settlement was negotiated at arm's length by counsel well versed in class litigation, particularly with respect to automotive defect cases, and is therefore entitled preliminarily to "a presumption of fairness." *Gribble v. Cool Transports Inc.*, No. CV 06-04863, 2008 WL 5281665, *9 (C.D. Cal. Dec. 15, 2008); *see* Gibbs Decl., ¶¶ 6-9. In addition, the settlement presented by the parties contains no obvious deficiencies: It provides class relief quite similar to that sought in the complaint, does not grant preferential treatment to the class representatives, and does not provide for attorneys' fees at the expense of the class. *See Chun-Hoon*, 2009 WL 334959 at *2.

An objective evaluation of the settlement confirms that the relief negotiated on behalf of the Class Members both is reasonable and exceptional. The settlement squarely addresses the rear braking system defect alleged in Plaintiffs' complaint and affords them relief comparable to that which they might hope to win at trial. Class members will receive a fix that corrects that rapid rear brake pad wear associated with the alleged defect, and they can also receive 50% reimbursement for *all* past brake pad replacements as compensation for the "extra" replacements that would not have been necessary but for the alleged defect. And by securing the relief now, the settlement prevents class members from incurring further damages and avoids the uncertainty associated with

11

prolonged litigation.  The relief offered by the settlement is even more attractive when viewed against the recent difficulties by consumers pursuing automotive defect cases, which make it very challenging to prevail against auto manufacturers when vehicle components do not last as long as consumers expect, even if a known manufacturing defect is responsible for the repairs.  *See, e.g.*, *Daugherty v. American Honda Motor Co.*, 144 Cal. App. 4th 824 (2006).

Given the favorable terms of the settlement and the manner in which these terms were negotiated, the proposed settlement should be preliminarily viewed as a fair, reasonable, and adequate compromise of the issues in dispute.  The Court should therefore grant preliminary approval of the settlement, order dissemination of notice to the Class for comment, and proceed to a formal fairness hearing.

## C.   <u>The Proposed Settlement Class Should Be Certified For Settlement Purposes</u>

### 1.   The Proposed Settlement Class Meets The Requirements Of Rule 23(a).

Before granting preliminary approval of a settlement, the Court should determine that the proposed settlement class meets the requirements of Rule 23.  *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); Manual for Complex Litigation, § 21.632. The prerequisites of certifying a class are (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation, each of which is satisfied here.  *See* Fed. R. Civ. P. 23(a); *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998).

The parties' proposed settlement class, set forth above in Section (C)(1), encompasses approximately 750,000 class vehicles and so readily satisfies the numerosity requirement.   *See id.* ("The prerequisite of numerosity is discharged if the class is so large that joinder of all members is impracticable.")

The proposed class also satisfies the commonality requirement of Rule 23(a), "which is generally considered a low hurdle easily surmounted."  *In re Sony SXRD Rear Projection TV Class Action Litig*., No. 06 Civ. 5173, 2008 U.S. Dist. LEXIS 36093, *35

12

(S.D.N.Y. May 1, 2008) (internal quotation marks omitted).  A proposed class meets this prerequisite "if there are questions of fact and law which are common to the class."  FED. R. CIV. P. 23(a)(2); *Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524, 526 (N.D. Cal. 2004).  Here, the questions of fact and law which are common to all class members include whether the class vehicles' rear braking system is inherently defective resulting in premature brake pad wear; whether and when Honda knew of the braking system defect; and whether Honda had a legal obligation to pay for the resulting brake pad replacements under warranty or disclose the defect to its customers.  (*See also* FAC, ¶ 39 (listing additional common questions).)

The final requirements of Rule 23(a), typicality and adequacy, are satisfied by the proposed representative plaintiffs, Ms. Browne and Mr. Moore.  Like other class members, Plaintiffs own or lease a class vehicle that allegedly suffers from a rear braking system defect, and were damaged by Honda's alleged failure to repair the defect under warranty or otherwise disclose the defect.  Plaintiffs' claims are thus typical of the Class, as "they are reasonably coextensive with those of absent class members."  *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1184 (9th Cir. 2007).  In addition, Ms. Browne and Mr. Moore are adequate class representatives, as they have no conflicts of interest with the proposed class and are represented by qualified and competent counsel.  *Id.* at 1185; *see* Gibbs Decl., ¶ 12; *id.*, Ex. 3 (Girard Gibbs firm résumé); *id.*, Ex. 4 (Berk Law PLLC résumé).

## 2.     The Proposed Settlement Class Meets The Requirements Of Rule 23(b)(3).

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)."  *Hanlon*, 150 F.3d at 1022.  Here, the proposed class is maintainable under Rule 23(b)(3), as common questions predominate over any questions affecting only individual members and class resolution is superior to other available methods for a fair resolution of the controversy.  *Id.* (citing FED. R. CIV. P. 23(b)(3)).  Class members' claims depend primarily on whether the class vehicles suffer from an inherent rear

braking system defect that causes excessive brake pad wear, which raises just the sort of predominantly common questions courts have found to justify class treatment. *See Parkinson v. Hyundai Motor America, Inc.*, 258 F.R.D. 580, 596-97 (C.D. Cal. 2008) (certifying nationwide class of Hyundai Tiburon owners based on plaintiffs' allegations of an inherent defect in the vehicles' flywheel system); *see also* Hanlon, 150 F.3d at 1022-23 (allegedly defective rear liftgate latches); *Daffin v. Ford Motor Co*., 458 F.3d 549, 552 (6th Cir. 2006) (allegedly defective throttle body assembly); *Chamberlan v. Ford Motor Co*., 223 F.R.D. 524, 526 (N.D. Cal. 2004) (allegedly defective engine intake manifolds).  Similarly, there can be little doubt that resolving all Class Members' claims through a single class action is superior to a series of individual lawsuits.  "From either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions. There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery."  *Hanlon*, 150 F.3d at 1023.  Indeed, the terms of the settlement negotiated on behalf of the class demonstrates the advantages of a collective bargaining and resolution process.  Finally, there can be no objection here that class proceedings would present the sort of intractable management problems that sometimes override the collective benefits of class actions, "for the proposal is that there be no trial."  *Amchem*, 521 U.S. at 620; s*ee also* FED R. CIV. P. 23(b)(3)(D).

## D.   The Court Should Order Dissemination Of The Proposed Class Notice

### 1.   The Agreement Provides For The Best Notice Practicable Under The Circumstances.

The federal rules require that class members who would be bound by this settlement, be given reasonable notice of the Agreement.  FED R. CIV. P. 23(e)(1).  The notice proposed here will provide Class Members with individual notice by first class mail, and so satisfies the requirements of due process.  *See Mullane v. C. Hanover Bank & Trust*, 339 U.S. 306, 314-18 (1950) (explaining that notice by first class mail will often be the "best practicable notice"); *Silber v. Mabon*, 18 F.3d 1449, 1453-54 (9th Cir. 1994)

14

(holding notice by direct mail and publication to be "best notice practicable" under the circumstances).

### 2. The Proposed Form Of Notice Adequately Informs Class Members Of Their Rights In This Litigation.

A notice provided to class members should "clearly and concisely state in plain, easily understood language" the nature of the action; the class definition; the class claims, issues, or defenses; that the class member may appear through counsel; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on class members.  FED R. CIV. P. 23(c)(2)(B).  The form of notice proposed by the parties here complies with those requirements.  (*See* Gibbs Decl., Ex. 1—A-1.)  It clearly and accurately informs the Class Members of the material terms of the settlement and their rights pertaining to it. Plaintiffs therefore request that the Court approve the form of notice and direct that notice be disseminated to the class as proposed.

### 3. Notice Of The Settlement Will Be Provided To Appropriate Federal And State Officials.

Notice of the proposed settlement will also be provided to the Attorney General of the United States and regulatory officials of all 50 states, as required by the Class Action Fairness Act, 28 U.S.C. § 1715.  (*See* Agreement IV(D).)  Within ten days of preliminary approval, Honda will provide these government officials with copies of all requested materials—including the Agreement, Class Notice, and the amended complaint—so that the states and the federal government may make an independent evaluation of the settlement and bring any concerns to the Court's attention prior to the final approval. (*See id.*)

### E.   The Court Should Set A Schedule For Final Approval

The next steps in the settlement approval process are to notify the class of the proposed settlement, allow Class Members an opportunity to file any objections, opt outs and hold a final approval hearing.  Toward those ends, the parties propose the following

15

schedule:

| | |
|---|---|
| Deadline to disseminate Class notice: | June 30, 2010 |
| Deadline to file final approval and fee application papers: | August 2, 2010 |
| Deadline for Class members to opt-out of the settlement: | August 16, 2010 |
| Deadline for Class members to file comments in support of or in objection to the settlement and/or fee application: | August 16, 2010 |
| Deadline for the parties' responses to any class member objections: | August 30, 2010 |
| Final settlement approval hearing: | September 13, 2010, 10 a.m. |

## IV.   **CONCLUSION**

For the foregoing reasons, the parties respectfully request that the Court enter the accompanying Proposed Order granting preliminary approval of the proposed settlement, certifying the settlement class, appointing Plaintiffs as Class Representatives and their Plaintiffs' attorneys as Class Counsel, directing dissemination of class notice, and setting a hearing for the purpose of deciding whether to grant final approval of the settlement.


DATED: March 26, 2010                     Respectfully submitted,

                                          **GIRARD GIBBS LLP**

                                          By:   /s/ Eric H. Gibbs

                                          Dylan Hughes
                                          Geoffrey A. Munroe
                                          601 California Street, Suite 1400
                                          San Francisco, California 94108
                                          Telephone: (415) 981-4800
                                          Facsimile: (415) 981-4846

16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Steven N. Berk
Michael Lewis
**BERK LAW PLLC**
1225 Fifteenth St. NW
Washington, DC 20005
Phone: (202) 232-7550
Facsimile: (202) 232-7556

*Attorneys for Individual and Representative
Plaintiffs Vanessa Browne and Paul Moore*

MEMORANDUM IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS SETTLEMENT
CASE NO. CV 09-06750-MMM(DTBx)