Eric H. Gibbs (State Bar No. 178658)
ehg@girardgibbs.com
Dylan Hughes (State Bar No. 209113)
Geoffrey A. Munroe (State Bar No. 228590)
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, California 94104
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

Steven N. Berk (*pro hac vice*)
steven@berklawdc.com
Michael Lewis (*pro hac vice*)
**BERK LAW PLLC**
1225 Fifteenth St. NW
Washington, DC 20005
Phone: (202) 232-7550
Facsimile: (202) 232-7556

Attorneys for Individual and Representative
Plaintiffs Vanessa Browne and Paul Moore

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VANESSA BROWNE and PAUL MOORE, on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br>   v.<br><br>AMERICAN HONDA MOTOR CO., INC.,<br><br>       Defendant. | Case No.  CV 09-06750-MMM(DTBx)<br><br>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**<br><br>Date:    July 26, 2010<br>Time:   10:00 a.m.<br>Before: Hon. Margaret M. Morrow |

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ......................................................................................... 1

II.   SUMMARY OF THE LITIGATION AND SETTLEMENT ................................. 2

    A.    The Claims Asserted ......................................................................... 2

    B.    Informal Discovery and Settlement Negotiations ......................................... 3

    C.    Terms of the Settlement ..................................................................... 4

        1.    The Settlement Class ................................................................ 4

        2.    The "Fix" ............................................................................. 5

        3.    Reimbursements for Installing the Improved Brake Pads ................. 5

        4.    Reimbursements For Past Brake Pad Replacements ......................... 6

        5.    A Speedy and Consumer-Friendly Claims Process .......................... 6

        6.    Dealer Education Program .......................................................... 7

        7.    Attorney Fees and Expenses ...................................................... 8

        8.    Mutual Release ....................................................................... 8

III.  CLASS RESPONSE TO THE SETTLEMENT ............................................. 8

IV.   ARGUMENT ........................................................................................... 11

    A.    The Class Action Settlement Process ................................................ 11

    B.    The Court Should Grant Final Approval of the Proposed Settlement ........ 11

        1.    The Strength of Plaintiffs' Case. .............................................. 13

i

2.      The Risk, Expense, Complexity, and Likely Duration of
        Further Litigation. ............................................................................. 15

3.      The Risk of Maintaining Class Action Status Through Trial. ........... 16

4.      The Amount Offered in Settlement. .................................................. 17

5.      The Extent of Discovery Completed and the Stage of the
        Proceedings. ...................................................................................... 18

6.      The Experience and Views of Counsel. ............................................. 19

7.      The Presence of a Governmental Participant. .................................... 20

8.      The Reaction of the Class Members to the Proposed Settlement. ..... 20

V.      CONCLUSION ......................................................................................... 20

TABLE OF CONTENTS

1

# **TABLE OF AUTHORITIES**

2

**Case**                                                                                                          **Page**

3

*Acosta v. Trans Union, LLC,*

4
      243 F.R.D. 377 (C.D. Cal. 2007) .................................................................. 16

5

*Daugherty v. American Honda Motor Co., Inc.,*

6
      144 Cal. App. 4th 824 (2006) ..................................................................... 14

7

*Dukes v. Wal-Mart Stores, Inc.,*

8
      603 F.3d 571 (9th Cir. 2010) ...................................................................... 17

9

*Hanlon v. Chrysler Corp.,*

10
      150 F.3d 1011 (9th Cir. 1998) .............................................................. 12, 13

11

*In re General Motors Corp. Dex-Cool Products Liability Litigation,*

12
      241 F.R.D. 305 (S.D. Ill., 2007) ................................................................. 19

13

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*

14
      55 F.3d 768 (3d Cir. 1995).......................................................................... 16

15

*In re Mercedes-Benz Tele Aid Contract Litigation,*

16
      257 F.R.D. 46 (D.N.J., 2009).................................................................... 19

17

*In re Omnivision Technologies, Inc.,*

18
      559 F.Supp.2d 1036 (N.D. Cal., 2008) ..................................................... 19

19

*In re TD Ameritrade Accountholder Litigation,*

20
      2009 WL 6057238 (N.D. Cal. 2009) ........................................................ 13

21

*Mazza v. American Honda Motor Co.,*

22
      No. 09-55376 (2010)................................................................................. 16

23

*Officers for Justice v. Civil Serv. Comm'n,*

24
      688 F.2d 615 (9th Cir. 1982) .................................................................... 12

25

*Parkinson v. Hyundai Motor America, Inc.,*

26
      258 F.R.D. 580 (C.D. Cal. 2008) ......................................................... 16, 19

27

28

TABLE OF AUTHORITIES

*Protective Committee for Independent Stockholders of TMT Trailer Ferry Inc. v. Anderson*,
    390 U.S. 414 (1968) ..................................................................................... 13

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (2009) ............................................................................... 12, 18


**<u>Statutes</u>**

Fed. R. Civ. Proc. 23(e) ...................................................................................... 11


**<u>Miscellaneous</u>**

Manual for Complex Litigation (Fourth) (2004) ...................................... 11, 13

TABLE OF AUTHORITIES

1

## I.  __INTRODUCTION__

2     The proposed settlement, reached at an early stage in this litigation, is poised to
3  avert a difficult situation that was growing worse by the day.  As alleged in the
4  Complaint, the roughly 750,000 Class members own or lease Honda Accord or Acura
5  TSX automobiles equipped with an allegedly defective braking system.  (*See* First
6  Amended Complaint ("FAC"), ¶1, Doc. #25.)  The alleged defect causes the rear brake
7  pads to wear out prematurely, leading to recurring, inconvenient repairs that typically
8  cost from $150 to $170.  (*Id.*)  Because the affected vehicles are all model years 2008-
9  2010, the impact on Class members is relatively recent and many Class members have
10  not yet needed repairs.  (Joint Declaration of Eric H. Gibbs and Steven N. Berk, ¶ 10
11  ("Joint Declaration").)

12     With the implementation of the settlement agreement, Class members will be able
13  to obtain newly-developed, longer-lasting brake pads and mechanical adjustments to their
14  cars' braking system (the "fix").  (Settlement Agreement, Ex. 1 to the Joint Declaration,
15  at III(A)(2).)  The fix will improve the life expectancy of the rear brake pads, minimizing
16  unanticipated costs for class members, and averting repair costs entirely for many of
17  those who have yet to replace their rear brake pads.  (*See* Joint Decl., ¶¶ 10, 22.)

18     The terms of the settlement ensure that every member of the class will be eligible
19  to obtain the fix, and that they will be reimbursed for most (if not all) of its cost.  (*Id.* at ¶
20  25.)  Honda is required to reimburse class members in full for the fix, up to $150.
21  (Agreement, III(A)(2)-(3), Ex. 1 to the Joint Declaration.)  The parties carefully tailored
22  the settlement to minimize Class members' repair costs, doing their best to keep the total
23  price of the fix at or near $150.  (*Id.*; Joint Decl., ¶25.)  Accordingly, the suggested retail
24  price of the improved part will be frozen at $66.66 for the next year (with additional
25  limits for the following two years), and Class members will be free to shop around for the
26  cheapest available labor costs, as they will receive reimbursements regardless of whether
27  they have repairs performed at Honda dealerships or elsewhere.  (Agreement, III(A)(2)-
28  (3).)

PLAINTIFFS' MEMORANDUM ISO FINAL APPROVAL OF CLASS SETTLEMENT
CASE NO. CV 09-06750-MMM(DTBx)

The settlement also provides redress for those Class members who needed rear brake pad replacements before the fix became available and therefore paid to have the original Honda brake pads reinstalled. (*Id.*, III(A)(1).) These class members will be eligible to receive reimbursements for half of their costs, up to $125 for each replacement. (*Id.*) In addition, the claims process is designed for a quick turnaround, so eligible class members will receive their reimbursements promptly upon submission of their claims. (*See, e.g.*, *id.*, V(A)-(B) (requiring Claims Administrator to send reimbursement or written explanation within 10 days of receipt of claims).)

Hence, the settlement provides expedited results that will minimize future expense and inconvenience for the class. The relatively early settlement not only spares the parties and the Court the high costs inherent in complex litigation, it makes an immediate difference for many class members. Already, Class Counsel and the Settlement Administrator have heard from *thousands* of class members anxious to take part in the settlement and to obtain the fix for their vehicles. (Joint Decl., ¶¶ 28-29.) Given the strong benefits achieved and the positive reaction from the class, the Plaintiffs respectfully request that the Court grant final approval of the proposed settlement.

## II.   SUMMARY OF THE LITIGATION AND SETTLEMENT

### A.   The Claims Asserted

Plaintiffs filed the Original Complaint on September 16, 2009, and filed the First Amended Complaint on January 14, 2010. (Docs. #1, 25.) Plaintiffs assert that the braking system used in all 2008-2009 Honda Accords, all 2009 Acura TSX vehicles, and some 2010 Honda Accords and Acura TSX vehicles is defective, causing premature deterioration of the rear brake pads. (FAC, ¶¶ 1, 15.) As a result, Class vehicles typically require rear brake pad replacements about every 15,000 to 20,000 miles, which Plaintiffs allege is more frequent than what is typical for an automobile's rear-braking system. (*Id.*) Plaintiffs sought recovery from Honda for breach of its express warranties and for violation of California's consumer protection laws (the Unfair Competition Law and Consumers Legal Remedies Act). (FAC, ¶¶ 44-79.) Among other things, Plaintiffs

2

1   requested that Honda (i) provide class members with a remedy to reduce required future
2   repair costs, and (ii) reimburse class members for costs already incurred due to the
3   premature rear brake pad wear.  (FAC, ¶¶ 61, 78; Joint Decl., ¶ 9.)

4        **B.        Informal Discovery and Settlement Negotiations**

5        Before and after filing the Original Complaint, Class Counsel conducted an
6   extensive investigation, which included:

7   •        Reviewing consumer complaints and reports to the National Highway
8            Traffic Safety Administration (NHTSA) and interviewing Class members
9            nationwide (Joint Decl., ¶ 8);

10  •        Speaking with automotive repair facilities and Honda dealerships (*id.*);

11  •        Consulting with an engineering expert, a brake system expert, and a master
12           technician concerning topics ranging from consumer expectations to the
13           technical aspects of the Class vehicles' rear braking system and potential
14           improvements to the braking system (*Id.* at ¶¶ 8, 14);

15  •        Obtaining and reviewing braking system components, repair receipts,
16           technical service bulletins, owner's and warranty manuals, rear braking
17           system design schematics, and Honda vehicle brochures and advertising (*id.*
18           at ¶¶ 8, 12); and

19  •        Researching frequency and type of repairs, braking system price data, and
20           the design of the rear braking system.  (*Id.* at ¶¶ 8, 12, 17.)

21       Based on the results of the investigation, Class Counsel tried to achieve two often
22  competing goals.  First, to resolve the case quickly by providing a remedy that would
23  spare additional class members from having to pay to replace the rear brake pads that
24  Honda refused to cover under warranty.  (Joint Decl., ¶ 10.)  Second, to secure
25  compensation for the millions of dollars that Class members had already paid replacing
26  their rear brake pads.  (*Id.*)

27       In Class Counsel's experience, the speed and the quality of a resolution are often
28  at odds because some defendants use the threat of delay as settlement leverage.  (Joint

PLAINTIFFS' MEMORANDUM ISO FINAL APPROVAL OF CLASS SETTLEMENT
CASE NO. CV 09-06750-MMM(DTBx)

Decl., ¶ 10.)  The flip side is also often true, where the defendant will seek a fairly inexpensive resolution early in the case, recognizing that Class Counsel must foot the expense of protracted litigation.  (*Id.*)  Here, the parties found common ground fairly early, each recognizing that the other was prepared for a lengthy fight, while at the same time recognizing the potential benefits an early and meaningful resolution would bring Honda's customers.  (*See id.*, ¶¶ 11, 13.)  Starting within weeks after being served with the Complaint, Honda worked closely with Class Counsel to fast-track informal discovery and settlement negotiations.  (*Id.*, ¶¶ 13-22.)  The parties held a series of conferences during the fall 2009, which included frank, in-person discussions involving Plaintiffs' experts and Honda's senior engineer.  (*Id.* at 13-17.)  Those meetings and telephone discussions led to further exchanges of information, a settlement conference mediated by the Court, and depositions of a senior Honda engineer, among other things. (*Id.*, ¶¶ 16-22.)  The parties reached agreement on the terms of a class-wide settlement in January 2010.[1]  (*Id.* at ¶ 22.)

### C.   Terms of the Settlement

#### 1.   The Settlement Class

The Settlement Agreement defines the proposed class as "All residents of the United States, Commonwealth of Puerto Rico, U.S. Virgin Islands, and Guam who currently own or lease, or previously owned or leased, a Class Vehicle."  (Agreement (I)(8).)  Class Vehicles are, in turn, defined to include the following automobiles:

(a)   2008 and 2009 model year Honda Accord automobiles;

(b)   2009 model year Acura TSX automobiles;

(c)   Certain 2010 model year Honda Accord automobiles; and

(d)   Certain 2010 model year Acura TSX automobiles.[2]

---

[1]    A detailed account of Class Counsels' activities throughout this case is set forth in the accompanying Joint Declaration of Eric H. Gibbs and Steven N. Berk.

[2]    Plaintiffs' and Honda's counsel jointly maintain a list of the effected 2010 Honda Accord and 2010 Acura TSX automobiles, which is available to Class members at both www.accordsettlement.com and www.GirardGibbs.com/HondaBrakes.asp.

PLAINTIFFS' MEMORANDUM ISO FINAL APPROVAL OF CLASS SETTLEMENT
CASE NO. CV 09-06750-MMM(DTBx)

1   (Agreement (I)(11).)  The Class definition encompasses about 750,000 vehicles, all of

2   which use the braking system at issue in the litigation.  (*See* Joint Decl., ¶ 19.)

3           **2.      The "Fix"**

4           The primary benefit of the settlement is the development of a fix that is expected

5   to improve the life expectancy of the rear brake pads in Class Vehicles.  The chief aspect

6   of the fix is Honda's newly designed rear brake pad set, which is now available at

7   dealerships.  (Joint Decl., ¶¶ 22, 27; Agreement I(23).)  Based on Honda's testing data,

8   which Class Counsel and their experts reviewed, installation of the newly designed brake

9   pads, along with a minor mechanical adjustment to the vehicles' calipers, should allow

10  the rear brake pads in Class Vehicles to last at least as long as the brake pads in 2003-

11  2007 Honda Accords (the preceding generation of vehicles).  (Joint Decl., ¶ 22.)  In other

12  words, the newly designed brake pads are expected to meet consumers' reasonable

13  expectations, and thus address Plaintiffs' consumer protection claims.  When Class

14  members next take their cars into a Honda dealership or third party repair facility for rear

15  brake pad replacements, the Class members should receive the improved rear brake pads.

16          **3.      Reimbursements for Installing the Improved Brake Pads**

17          Every Class member will have 3 years from the vehicle's original purchase or

18  lease date to obtain the fix (or 90 days from Final Approval, if longer) and thus become

19  eligible for reimbursement up to $150.  (*Id.*, I(2), III(A)(3).)  The national average for

20  rear brake pad replacements is slightly in excess of $150, typically between $150 and

21  $170.  (Joint Decl., ¶ 25.)  In addition, the Settlement Agreement minimizes expected

22  repair costs by freezing the suggested retail price of the improved parts at $66.66 for the

23  next year, and by permitting Class members to shop around for the cheapest available

24  labor costs (reimbursement will be available even if repairs are not performed at Honda

25  dealerships).  (Agreement, III(A)(2)-(3).)  So, Class members can, in effect, receive a

26  free (or almost free) replacement with the new improved rear brake pads.  If Class

27  members prefer to replace their rear brake pads themselves, they can still recover 100%

28  of the cost of the improved brake pads.  (*Id.*, III(2)-(3).)

1

### 4.    Reimbursements For Past Brake Pad Replacements

2

Class members are also eligible to claim reimbursements for rear brake pad

3 replacements performed using the original Honda brake pads before the fix became

4 available.  (Agreement, III(A)(1).)  Class members will be eligible for reimbursement for

5 such repairs, regardless of whether the repairs were performed at a Honda dealer, at an

6 independent repair facility, or by the Class member.  (*Id.* III(A)(1).)  Thus, the persons

7 who had to replace brake pads before the fix became available can be compensated

8 appropriately for each premature replacement.  (*See* Joint Decl., ¶¶ 10, 25.)

9

The settlement provision providing for reimbursement for past replacements is

10 proving to be a material benefit to Class members.  As of June 19, 2010, the Claims

11 Administrator reports receiving more than 20,000 claim forms.  Because these claim

12 forms were received by June 19, it is safe to assume that almost all of the claims are

13 seeking reimbursement for replacements using original Honda brake pads, for which

14 Class members will be reimbursed half of their out-of-pocket costs, up to $125 per

15 repair, including for expenses such as rotor resurfacing.  (Agreement, III(A)(1).)  If the

16 average recovery per claim form is $100, the total value of the claims submitted to date

17 is approximately $2,000,000.[3]  Under the terms of the settlement, the deadline for Class

18 members to submit claims for replacement of original brake pads is 90 days after the

19 effective date, which will be no sooner than five months from now.  (Agreement,

20 III(A)(1).)

21

### 5.    A Speedy and Consumer-Friendly Claims Process

22

The claims process for seeking reimbursements is designed to be fast and

23 convenient.  The claim form requires only that a Class member include a copy of a

24 receipt (or similar documentation) for each repair, fill out information such as their

25 phone number and the date they purchased or leased their vehicle, sign and date a short

26 certification, and mail the claim form to the Claims Administrator.  (Joint Decl., ¶ 18.)

27

28

---

[3] The average assumes that some claim forms seek recovery for multiple replacements, and for rotor resurfacing.

6

PLAINTIFFS' MEMORANDUM ISO FINAL APPROVAL OF CLASS SETTLEMENT
CASE NO. CV 09-06750-MMM(DTBx)

Class members will have 90 days from the date the settlement becomes effective, or for future repairs, 90 days after the date of the repair, to submit their claims, and they have the choice of using a single claim form for multiple reimbursements or using separate claim forms.  (Agreement, III(1), (3).)

Within 10 days of receiving a claim for reimbursement, the Claims Administrator is required to either (i) send the Class member his or her reimbursement, or (ii) send the Class member a written denial with instructions for curing deficiencies.  (Agreement V(B).)  If a Class member's claim is ultimately deemed invalid, the Class member will have an opportunity to seek review by a Better Business Bureau arbitrator at Honda's expense.  (Agreement, III(C), V(C).)

The Notice of Class Settlement informs Class members of their opportunity to request reimbursements for past and future rear brake pad replacements.  (*See* Order Granting Preliminary Approval of Class Settlement at 14, Doc. #34.)  The Notice explains that the premature rear brake pad does not pose a safety threat, explains how Class members can obtain reimbursements, and includes a reminder that Class members can put in their glove box for future reference.  (*Id.* at 13-15, 20.)  Information about the proposed settlement is also available to Class members on two websites (www.GirardGibbs.com/HondaBrakes.asp; www.accordsettlement.com), which contain similar information as well as contact information for the Claims Administrator, Class Counsel, and Honda.  (Agreement, IV(A)(2).)

## 6.    Dealer Education Program

Because Plaintiffs' investigation revealed that dealerships may have been unnecessarily resurfacing the rotors on Class vehicles, and imposing the costs on consumers, the Agreement required that Honda prepare a service bulletin designed to put an end to this practice.  (Agreement, III(B)(1).)  Honda has sent the bulletin to Honda and Acura dealerships and likewise made it available to independent repair facilities in May 2010.  (*Id.*, III(B)(1), (3).)  The service bulletin is also available for consumers at the two settlement websites mentioned in the preceding paragraph.  In addition to

7

discouraging unnecessary rotor resurfacing in connection with future rear brake pad replacements, the bulletin will help ensure that consumers receive uniform information about the rear braking system issue and settlement.

### 7.   Attorney Fees and Expenses

The time and expense incurred by Class Counsel to secure the relief on behalf of the Class will be paid entirely by Honda.  (Agreement, IX(B).)  This is the subject of a separate motion.

### 8.   Mutual Release

In exchange for the Class benefits provided by Honda under the proposed settlement, Plaintiffs and Class members will release Honda from all claims relating to the Class Vehicles' rear braking system as alleged in this Action, with the exception of claims for personal injury, property damage, subrogation and, with respect to Honda and Acura dealerships, independent tort liability relating to their servicing or repair of the rear braking system on Class vehicles.  (Agreement, (I)(13); VIII(A)-(B).)  Likewise, Honda will release the Class Representatives and Class Counsel from any claims related to this litigation or settlement.  (*Id.*, VIII(C).)

## III.   <u>CLASS RESPONSE TO THE SETTLEMENT</u>

Following the mailing and internet publication of Notice between May 24-28, 2010, Class members have shown significant interest in the Settlement.  As stated above, more than 20,000 Class members have already submitted claim forms.  In addition, thousands of Class members have contacted Counsel Counsel and the Claims Administrator.  For instance, since the last week of May 2010, Girard Gibbs has received over 3,000 telephone calls, over 1,000 e-mails regarding the proposed settlement, and over 8,000 website visits concerning the settlement.  As of June 18, Girard Gibbs has responded to every Class member inquiry, either in writing, through a conversation, or by leaving a voice-mail message.  (Joint Decl., ¶ 28; Declaration of David Stein Decl, ¶ 2.)

Rust Consulting, the Claims Administrator, has received over 5,000 telephone

PLAINTIFFS' MEMORANDUM ISO FINAL APPROVAL OF CLASS SETTLEMENT
CASE NO. CV 09-06750-MMM(DTBx)

calls and nearly 125,000 website visits.  (Joint Decl., ¶ 29.)  Rust Consulting's customer service representatives have answered over 2,600 Class member inquiries since it mailed the Notice.   (*Id.*.)

The vast majority of the Class members have called or e-mailed seeking to confirm information that was provided in the Notice or available on the websites.  (Stein Decl., ¶ 5.)  For instance, many people want to know when the Effective Date is, when they should send in the claim form, whether they can get reimbursement for multiple past brake repairs, whether they can get reimbursement for past brake repairs if they installed non-Honda brake pads, whether they need to replace their brake pads immediately, and whether their brakes pose a safety concern.  (*Id.*)  Additionally, several thousand people have asked that Girard Gibbs provide them with updates concerning the settlement and ongoing Court process.  (*Id.*, ¶ 2.)

Other Class members have written in to express their point of view on the Settlement.  For instance, some Class members have expressed their support for the Settlement:

> Thank you for taking this up with Honda.  I went through my first set of brake pads at 17,000 miles and now I've been told that i will have to replace them again soon and I am only at 31,000 miles.  It's great to see that there is a law firm who is looking out for the interest of the consumers.  (Michael H., June 16, 2010.)

> I own a 2008 Honda Accord EX-L and I'm very thankful you guys are doing this!  Same thing, my rear brakes wore down prematurely, honestly I noticed something wasn't right at 18,000 mi but I ignored the problem until somewhere between 30-35k miles, when I realized that my rear brakes were completely worn down.  Interestingly enough, the front brakes were as good as new.  I now have 52,600 mi on the vehicle and notice that my rear brakes are squealing again.  Again, I really appreciate the time and effort you guys have put into this case.  (Chris G., May 26, 2010.)

(Joint Decl., Ex. 3.)  Others have expressed frustration that Honda did not implement a voluntary recall or otherwise address the problem by itself.  Comments include:

9

> I received the Settlement Claim Form in the mail last week, about the same time that my back brakes started squealing and making horrific noises. I called the dealer yesterday after reading the information I received and over the phone they said yep that is what your problem is, and today when I brought my car in for the new brake pads I asked the Service Manager and he stated that was absolutely the problem. Why then the lawsuit? Why didn't Honda just opt to replace a defective part? … Anyway I have the receipts and will be sending them in. (Joyce R., June 8, 2010.)

(Joint Decl., Ex. 3; Stein Dec., ¶   Other Class members have complained that the settlement does not provide for reimbursement if the past replacement was with non-Honda brake pads:

> Hello. I have had many issues with my rear brakes ever since I purchased my 2009 Accord in May 2009. Each time I went to the dealer I complained, they noted the wear, and refused to do anything about it. When I did need to replace them finally, I went to a local shop, I was absolutely not going to pay an inflated dealer price to replace my brakes when they should have done it for free to begin with. How I read this, the parts that the shop used may not be covered which is wrong, the fact is that I spent $114 to replace their defective product. I gave them every chance to repair, with documentation to prove this. Please help. (George N., June 8, 2010.)

(Joint Decl., Ex. 3; Stein Dec., ¶ 5.) And some Class members have complained that they will not get reimbursed 100% of what they paid to replace the brake pads:

> . . .   The total expense was $164.57. I understand that the settlement administrator will determine the exact amount of the reimbursement. I would like to comment that I believe the reimbursement should cover the entire cost of the replacement, not only 50% if original rear brake pads were used in the repair. My vehicle only had 22,952 miles at the time the repair became necessary. Please consider modifying the reimbursement guidelines to make claimants whole. … (Gary R. Lewis, June 1, 2010.)

(Joint Decl., Ex. 3; Stein Dec., ¶ 5.)

Plaintiffs provide the above examples and generally summarize the Class member responses to provide the Court with some flavor of what Class members are saying about the Settlement. Plaintiffs will address the entirety of Class members' comments,

10

PLAINTIFFS' MEMORANDUM ISO FINAL APPROVAL OF CLASS SETTLEMENT
CASE NO. CV 09-06750-MMM(DTBx)

criticisms, and objections in their reply filing, which is due on July 12, 2010 (seven days after the comment period closes).

## IV.   ARGUMENT

### A.   The Class Action Settlement Process

A class action settlement like the one proposed here must be approved by the Court to be effective. *See* FED. R. CIV. PROC. 23(e). The court approval process has three principal steps:

1. A preliminary approval hearing, at which the court considers whether the proposed settlement is within the range of reasonableness possibly meriting final approval;

2. Class members are notified of the proposed settlement and given an opportunity to express any objections;

3. A "formal fairness hearing," or final approval hearing, at which the Court decides whether the proposed settlement should be approved as fair, adequate, and reasonable to the class.

*See* MANUAL FOR COMPLEX LITIGATION (FOURTH) §§ 21.632-34 (2004).

The first two steps have been the completed. The Court granted the motion for preliminary approval of the proposed settlement, (Doc. #34), and Honda has notified Class members of the proposed settlement and fairness hearing. (Agreement, IV(C); Joint Decl. ¶ 27.). Plaintiffs now ask that the Court grant final approval of the proposed settlement.

### B.   The Court Should Grant Final Approval of the Proposed Settlement

A proposed class action settlement may be approved if the Court, after allowing absent class members an opportunity to be heard, finds that the settlement is "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). In making this determination, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or

11

collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Rodriguez v. West Publ'g Corp*., 563 F.3d 948, 965 (2009) (quoting *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998)); *see also Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("voluntary conciliation and settlement are the preferred means of dispute resolution.  This is especially true in complex class action litigation…")).

The decision of whether to approve the parties' proposed settlement is committed to the sound discretion of the trial judge, and will not be overturned except upon a strong showing of a clear abuse of discretion.  *Hanlon*, 150 F.3d at 1026-27.  The Ninth Circuit has, however, set forth a list of non-exclusive factors that a district court should balance in deciding whether to grant final approval, namely:

(1)    The strength of plaintiffs' case;

(2)    The risk, expense, complexity, and likely duration of further litigation;

(3)    The risk of maintaining class action status throughout the trial;

(4)    The amount offered in settlement;

(5)    The extent of discovery completed, and the stage of the proceedings;

(6)    The experience and views of counsel;

(7)    The presence of a governmental participant; and

(8)    The reaction of the class members to the proposed settlement.

*Id.* at 963 (referred to hereafter as the "*Hanlon* factors").

The first four *Hanlon* factors are designed to assist the Court in comparing the compromise with the likely rewards of litigation.  By evaluating the strength of the Plaintiffs' case; the risk, expense, complexity, and delay associated with further proceedings; and the risk of maintaining class certification through trial, the Court can get a good idea of the value of class members' claims.  The Court can then evaluate the

amount offered by the parties' proposed settlement in context to determine whether it provides fair compensation for those claims—or, stated another way, "whether the interests of the class are better served by the settlement than by further litigation." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.61 (2004); s*ee generally In re TD Ameritrade Accountholder Litigation*, 2009 WL 6057238, *4 (N.D. Cal. 2009) ("Basic to the process of deciding whether a proposed settlement is fair, reasonable and adequate is the need to compare the terms of the compromise with the likely rewards of litigation.") (quoting from *Protective Committee for Independent Stockholders of TMT Trailer Ferry Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968)) (brackets and ellipsis removed).

The remaining *Hanlon* factors offer additional perspective on whether the amount offered by the settlement is fair, with the fifth factor designed to ensure that the parties and the Court have sufficient information to intelligently assess the value of class members' claims, the sixth and eighth factors taking into account class counsel's and individual class members' opinions about the settlement, and the seventh factor accounting for the position or views of any governmental participant.

A thorough evaluation of the *Hanlon* factors in this case shows that the proposed settlement provides strong value to class members without the risk and delay associated with further litigation, and should be approved as a fair, adequate, and reasonable resolution of their claims against Honda.

### 1.    The Strength of Plaintiffs' Case.

Plaintiffs believe they have a fairly strong case on the facts, which is borne out by the strength of the settlement itself.  For instance, Plaintiffs believe that over the course of the litigation, they could marshal evidence that in Honda's non-Class vehicles the rear brake pads usually last over 30,000 miles; that Honda knew or should have known that the rear brake pads in the Class vehicles would wear out in 15,000 to 20,000 miles; that the rear brake pads in the Class vehicles did not meet consumers' reasonable expectations; and that Honda failed to disclose this material information to Class members.  Nevertheless, Class Counsel are seasoned in automobile defect class litigation,

13

1   and recognize that even were they able to make such a factual showing, their case could

2   fail on liability, or at least be whittled down in terms of overall liability.  For example,

3   under California law, when it comes to a consumer's reasonable expectation with regard

4   to an allegedly defective product, a consumer's expectation is sometimes defined by the

5   terms of the warranty itself.  *Daugherty v. American Honda Motor Co., Inc.,* 144 Cal.

6   App. 4th 824, 830 (2006).  Here, because Honda's brake pads are defined as a wear part

7   and thus are not warranted at all, Honda has a plausible argument that consumers have no

8   reasonable expectation as to the length of performance of its rear brake pads to begin

9   with.

10          If Plaintiffs were required to overcome *Daugherty's* reasonable expectation

11  obstacle by arguing that the braking system is defective, not solely the brake pads

12  themselves, Honda would likely contend that Plaintiffs' claims are limited to those

13  repairs performed within 3 years or 36,000 miles, essentially limiting its liability to the

14  in-warranty repairs that Class members paid for.  And, with respect to those in-warranty

15  repairs, Honda would likely argue that brakes pads wear out in the ordinary course of

16  driving, thus requiring Plaintiffs to prove not just that the brake pads were wearing out

17  but that they were consistently wearing out significantly more rapidly than a reasonable

18  consumer would expect *because* of an overall defect in the braking system, not because

19  of the manner in which an individual drives. Honda also might have a colorable defense

20  that it did not conceal material information because it did not discover the problems with

21  the brake pads until after it had sold many of the Class vehicles, further whittling away

22  the scope of the Class and its overall liability.

23          If the case were to proceed to trial (presumably sometime in 2012) and if Plaintiffs

24  were to prevail, then the Class could recover damages sufficient to compensate the Class

25  for the past and future costs of unnecessary brake pad replacements.  In all likelihood,

26  Class members would have to identify themselves and the repairs they paid for to receive

27  a recovery.  Assuming that Class vehicle brake pads wear out twice as quickly as

28  expected, a reasonable measure of damages for past costs could be estimated as 50% of

14

**PLAINTIFFS' MEMORANDUM ISO FINAL APPROVAL OF CLASS SETTLEMENT
CASE NO. CV 09-06750-MMM(DTBx)**

the past cost of replacement.  The damages for future costs could be estimated through a similar methodology or Honda could mitigate future damages by replacing the current brake pads with non-defective pads.  Any damage award in 2012 or later would need to be distributed to Class members based on vehicle ownership records that would then be several years old and Class members would need to locate receipts for repairs that would be equally old, likely significantly reducing the overall recovery of the Class.  In other words, a victory at trial could look quite similar to the settlement before the Court.

### 2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation.

If the parties had been unable to resolve this case through settlement, the litigation could have been expensive and lengthy.  For instance, in a case against General Motors alleging a defect in an intake manifold gasket, plaintiffs' counsel devoted more than 58,000 hours over five years before resolving the cases for cash reimbursements through a claims made process, and in a case against Hyundai Motor America, plaintiffs' counsel devoted more than 7,000 hours over four years before resolving the case for cash reimbursements through a claims-made process.  (Declaration of Eric H. Gibbs, ¶ 4.)  The reality is that any case against a major automotive manufacturer alleging a defect in thousands of vehicles has the potential to take up significant amounts of the Court's and the parties' resources.  Here, it was necessary for Plaintiffs to retain technical automotive experts and engineers to assist in the investigation, mediation and settlement of the case.  If the case proceeds in litigation, Plaintiffs will need to retain additional experts on issues such as consumer expectations and damages.  The expert costs in this case will be very expensive.

In addition, this case, if aggressively litigated, could take several years.  In all likelihood, Honda would move to dismiss Plaintiffs' complaint, which could result in Plaintiffs amending their complaint.  Settling the pleadings would likely take 3 months, if not more.  To develop proof on what Honda knew and when Honda knew it, Plaintiffs would need at least 8 months to obtain and review Honda's documents regarding the

PLAINTIFFS' MEMORANDUM ISO FINAL APPROVAL OF CLASS SETTLEMENT
CASE NO. CV 09-06750-MMM(DTBx)

1   design of the Class vehicle brake systems and the marketing of those vehicles, the

2   customer complaint, warranty and goodwill databases and related documents, as well as

3   to depose the relevant design engineers, quality control engineers, and marketing

4   personnel.  This discovery would be followed by a motion for class certification (at least

5   4 months), a Rule 23(f) request (at least 3 months, if not accepted; at least 2 years if

6   accepted), a class notice period (at least 3 months), a potential motion for summary

7   judgment (at least 5 months), and then another 4-5 months of pre-trial preparation.  It is

8   unlikely the case could be set for trial before late-2012, with post-trial activities to follow.

9   By that time, most Class members' warranties would have expired.

10              **3.      The Risk of Maintaining Class Action Status Through Trial.**

11          Honda likely would oppose class certification if the case were to proceed on the

12   merits.  Although Plaintiffs believe they can present evidence that Honda designed,

13   manufactured, and sold a product with common characteristics, brake pads do wear out at

14   different rates over time depending on how a person drives and the conditions in which

15   they drive.  This potentially creates the sort of individualized issues that might preclude

16   class certification.  "The value of a class action 'depends largely on the certification of

17   the class,' and [] class certification undeniably represents a serious risk for plaintiffs in

18   any class action lawsuit."  *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 392 (C.D. Cal.

19   2007) (quoting *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768,

20   817 (3d Cir. 1995)).  Moreover, while Plaintiffs could present strong arguments that their

21   UCL and CLRA claims should be certified on a nationwide basis, their warranty claims

22   are weaker in that regard.  *See Parkinson v. Hyundai Motor America*, *Inc.*, 258 F.R.D.

23   580, 596-97 (C.D. Cal. 2008) (J. Stotler) (certifying UCL and CLRA on nationwide

24   basis; denying certification of warranty claims).  And, the Ninth Circuit is expected to

25   take up the issue of nationwide certification of UCL and CLRA claims in *Mazza v.*

26   *American Honda Motor Co.,* No. 09-55376, Doc. 47 (oral argument was June 9, 2010).

27   Even if Plaintiffs were successful initially in certifying a class, the Court maintains

28   ongoing discretion to revisit its certification decision throughout the legal proceedings

**PLAINTIFFS' MEMORANDUM ISO FINAL APPROVAL OF CLASS SETTLEMENT
CASE NO. CV 09-06750-MMM(DTBx)**

and to modify or even decertify the class. *Dukes v. Wal-Mart Stores, Inc*., 603 F.3d 571, 579 (9th Cir. 2010). The bottom line is that there is much risk in procuring class certification, and maintaining it through trial.

### 4.     The Amount Offered in Settlement.

The proposed settlement provides benefits to the Class equal to, if not greater than, those that could be obtained through trial. Class members can seek reimbursement for the installation of the improved, longer lasting brake pads in full, up to $150. Each Class member who previously spent money replacing their rear brake pads can also seek reimbursement for half of their out of pocket costs, up to $125 per replacement. To put this in context, consider the following communications Class Counsel received from Class members before the settlement was announced, which represent typical situations for many Class members:

> rear breakes replaced at 23,000 miles. Dealer said there was an investigation but they cancelled it because Honda needs more people to complain before they will recall the premature break wear. I paid out of pocket $144.95. They said they will need to be replaced every 15K to 20K miles and that I would have to replace the rear breaks twice and the front breaks once. This should not be because it is a front wheel drive car. They never offered to pay 1/2 of the cost. Please advise if a suit is filed and include me in it. this was supposed to be a dependable car. It is my first Honda and will be my last! Thanks! From all the forums, Honda is pretending they don't know about this issue and are not worried about loosing customers! Thanks! (Patricia K., November 28, 2009.)

> I own a 2008 Honda Accord and just had the rear break pads replaced at 25k. They have been making noise well before this though. The dealer is charging me $170 to replace. This is unacceptable! (Lynn W., January 4, 2010.)

(Joint Decl., Ex. 3.) In these instances, both Patricia K. and Lynn W. should be able to recover half of the costs of their prior rear brake repairs. Patricia K., who spent $144.95 replacing her rear brake pads, will be able to recover about $72.50. Likewise, Lynn W., who spent $170, will be eligible to claim $85. In addition, both Patricia K. and Lynn W.

will be eligible to be reimbursed after having the improved rear brake pads installed, up to $150.  For Patricia K., this would mean that for two repairs, and after about 40,000 miles, she will have only spent a little over $70 in total out-of-pocket costs (assuming her next repair costs about the same as the previous repair).  Similarly, Lynn W., after two repairs and about 50,000 miles, will only have spent a little over $100 for her two repairs. When compared to the experiences of owners of non-Class vehicles, many of whom would have paid the full cost of a brake pad replacement (approximately $150) after about 40,000 miles, both Patricia K. and Lynn W. end up in a better position economically.

By securing relief for Class members now, the settlement not only avoids the uncertainty associated with prolonged litigation but also permits the prompt distribution of benefits to Class members when they are easier to locate and when they can in turn more easily file claims for benefits.  The newly developed brake pads have been available at most Honda dealerships since June 10, 2010.  Class members can have the new brake pads installed anytime within the three years of their car's original purchase or lease date. And, to ensure the earliest purchasers are not prejudiced, even if those three years are set to expire, everyone will have through 90 days following Final Approval to obtain the parts and maintain eligibility for reimbursement.  Since the Class vehicles are model years 2008, 2009, and 2010, most Class members will be able to wait until their current rear brake pads reach the end of their useful life before they install Honda's newly developed brake pads at a time of their convenience.

### 5.    The Extent of Discovery Completed and the Stage of the Proceedings.

Class Counsel has sufficient information to evaluate the strengths and weaknesses of the claims intelligently.  *Rodriguez*, 563 F.3d at 967; (Joint Decl., ¶ 21).  Class Counsel diligently investigated before filing this case and obtained significant additional information during the informal and confirmatory discovery process.  Perhaps most significant to the practical solution, Class Counsel retained experts and Plaintiffs' experts

had candid face to face meetings with Honda's experts where they could discuss the problems with the brake pads, the effect that this had on the wear rate, and how Honda could remedy the problem.  (Joint Decl., ¶¶ 8-22.)  Class Counsel had a firm grasp of the strengths and weaknesses of the Class claims before recommending the settlement to the Class.

### 6.    The Experience and Views of Counsel.

The recommendation of experienced counsel weighs in favor of approving the Settlement.  *In re Omnivision Technologies, Inc.*, 559 F.Supp.2d 1036, 1043 (N.D. Cal., 2008).  Girard Gibbs has substantial experience with automotive defect class action litigation, having represented consumers in:

- three cases against General Motors involving engine coolant, piston slap and emergency response system;
- three cases against Hyundai Motor America involving flywheels, passenger-side airbags and overstated horsepower;
- one case against Mercedes-Benz involving an emergency response system;
- two cases against BMW involving rear subframes and passenger-side airbags;
- one case against Mitsubishi involving wheel rims; and
- one case against Volkswagen involving engine coils.

(Gibbs Decl., ¶3, Ex. 1.)  *See, e.g.*, *In re Mercedes-Benz Tele Aid Contract Litigation*, 257 F.R.D. 46 (D.N.J., 2009) (Girard Gibbs represented plaintiff class); *Parkinson v. Hyundai Motor America, Inc.*, 258 F.R.D. 580, 596-97 (C.D. Cal. 2008) (same); *In re General Motors Corp. Dex-Cool Products Liability Litigation*, 241 F.R.D. 305 (S.D. Ill., 2007) (same).  Berk Law also has significant experience in investigating and prosecuting class actions on behalf of consumers, including a current case against Nissan regarding anti-lock brakes.   (Berk Decl., Ex. 1.)   These experienced Class Counsel recommend the settlement without reservation.  (Joint Decl., ¶ 5)

PLAINTIFFS' MEMORANDUM ISO FINAL APPROVAL OF CLASS SETTLEMENT
CASE NO. CV 09-06750-MMM(DTBx)

### 7.   The Presence of a Governmental Participant.

Plaintiffs initiated and prosecuted this case based on their personal experience and subsequent investigation.  There was no pre-existing or parallel investigation by the National Highway Traffic Safety Administration (NHTSA) that implicitly validated the merit of the claims or put pressure on Honda to address the problems with its brake pads.

### 8.   The Reaction of the Class Members to the Proposed Settlement.

As set forth above, Class Counsel and Rust Consulting have communicated with thousands of Class members regarding the settlement and the reaction of the Class members has been largely positive.  (Stein Decl., ¶¶ 2-4.)  More than 20,000 Class members have already filed claims, and many Class members have thanked Plaintiffs and Class Counsel for their work.   In contrast, as of June 19, 2010, a much smaller number of people have objected to or criticized the settlement, with 258 people having opted-out. (Joint Decl., ¶ 30.)  The last date to mail or deliver a comment regarding the settlement is July 5, 2010, so Plaintiffs will specifically respond to all favorable comments, criticisms, and objections in their later reply filing, which is due July 12, 2010.

## V.   <u>CONCLUSION</u>

The proposed settlement will provide significant benefits to the Class, will do so in the immediate future, and does not represent a significant discount from what Plaintiffs might hope to achieve if they were to succeed at trial.  The proposed settlement is fair, reasonable, and adequate by any measure.

Plaintiffs respectfully request that the Court grant final approval of the proposed settlement and enter final judgment.  Class Counsel will provide the Court with a Proposed Order of Dismissal and Final Judgment prior to the final approval hearing, which will include a list of all persons who have timely requested to be excluded from the class.

PLAINTIFFS' MEMORANDUM ISO FINAL APPROVAL OF CLASS SETTLEMENT
CASE NO. CV 09-06750-MMM(DTBx)

1   DATED: June 21, 2010                Respectfully submitted,

2                                       **GIRARD GIBBS LLP**

3

4                                       By:   /s/ Eric H. Gibbs

5                                       Dylan Hughes
6                                       Geoffrey A. Munroe
                                        601 California Street, Suite 1400
7                                       San Francisco, California 94108
                                        Telephone: (415) 981-4800
8                                       Facsimile: (415) 981-4846
9

10                                      Steven N. Berk
11                                      Michael Lewis
                                        **BERK LAW PLLC**
12                                      1225 Fifteenth St. NW
13                                      Washington, DC 20005
                                        Phone: (202) 232-7550
14                                      Facsimile: (202) 232-7556
15

16                                      *Attorneys for Individual and Representative*
                                        *Plaintiffs Vanessa Browne and Paul Moore*
17

18

19

20

21

22

23

24

25

26

27

28

---

21

PLAINTIFFS' MEMORANDUM ISO FINAL APPROVAL OF CLASS SETTLEMENT
CASE NO. CV 09-06750-MMM(DTBx)