Eric H. Gibbs (State Bar No. 178658)
ehg@girardgibbs.com
Dylan Hughes (State Bar No. 209113)
Geoffrey A. Munroe (State Bar No. 228590)
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, California 94104
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

Steven N. Berk (*pro hac vice*)
steven@berklawdc.com
Michael Lewis (*pro hac vice*)
**BERK LAW PLLC**
1225 Fifteenth St. NW
Washington, DC 20005
Phone: (202) 232-7550
Facsimile: (202) 232-7556

Attorneys for Individual and Representative
Plaintiffs Vanessa Browne and Paul Moore

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VANESSA BROWNE and PAUL MOORE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN HONDA MOTOR CO., INC.,<br><br>Defendant. | Case No. CV 09-06750-MMM(DTBx)<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**<br><br>Date: July 26, 2010<br>Time: 10:00 a.m.<br>Before: Hon. Margaret M. Morrow |

REPLY IN SUPPORT OF FINAL APPROVAL OF CLASS SETTLEMENT
CASE NO. CV 09-06750-MMM(DTBx)

**TABLE OF CONTENTS**

Page

I. Introduction ................................................................................................... 1

II. Class Reaction To The Settlement ................................................................ 2

III. Response To Objections ................................................................................ 3

    A. Category #1: The Settlement Doesn't Offer Compensation For Repairs Using Aftermarket Parts. ................................................. 3

    B. Category #2: The Settlement Should Offer More Compensation For Past Repairs ............................................................................. 4

    C. Category #3: Concerns About Future Brake Pad Wear .............................. 7

    D. Category #4: Class Members With Low Mileages Are Treated Unfairly ....................................................................................... 7

    E. Category #5: Class Members Shouldn't Have To Advance The Cost Of Installing The New Material Pads And Wait For A Refund .................... 9

IV. Class Reaction To The Class Counsel's Request For Attorney Fees. ................... 9

V. Conclusion ................................................................................................... 11

**TABLE OF AUTHORITIES**

**Case**                                                                                                          **Page**

*Browning v. Yahoo! Inc.*,
    2007 WL 4105971 (N.D. Cal. 2007) ............................................................................. 6

*Chavez v. Netflix, Inc.*,
    162 Cal. App. 4th 43 (2008) ..................................................................................... 10

*Churchill Village, L.L.C. v. General Electric.*,
    361 *F*.3d 566 (9th Cir. 2004) ..................................................................................... 3

*Daugherty v. American Honda Motor Co.*,
    144 Cal. App. 4th 824 (2006) ..................................................................................... 8

*Garner v. State Farm Mut. Auto. Ins. Co.*,
    2010 WL 1687832 (N.D. Cal. 2010) .................................................................... 2, 3

*Hanlon v. Chrysler Corporation*,
    150 F. 3d 1011 (1998) ............................................................................... 1, 2, 6, 11

*Jaffe v. Morgan Stanley & Co.*,
    2008 WL 346417 (N.D. Cal. 2008) ......................................................................... 6

*Lealao v. Beneficial California, Inc.*,
    82 Cal. App. 4th 19 (2000) ..................................................................................... 10

*Mangone v. First USA Bank*,
    206 F.R.D. 222 (S.D. Ill. 2001) ............................................................................... 2

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ................................................................................... 6

*Rodriguez v. West Publishing Corp.*,
    563 F.3d 948 (9th Cir. 2009) ................................................................................... 3

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ................................................................................. 10

## I. INTRODUCTION

In *Hanlon v. Chrysler Corporation,* 150 F. 3d 1011, 1025 (1998), the Ninth Circuit set forth a list of factors that should be "explored comprehensively" before a class action settlement is approved. Plaintiffs' opening memorandum analyzed each of the *Hanlon* factors, which Plaintiffs believe show the proposed Honda and Acura Rear Brake Pad Class Action Settlement to be worthy of final approval. Plaintiffs did note, however, that the final *Hanlon* factor (the reaction of class members to the settlement) could not be fully assessed until the July 5th deadline for class member comments had passed. With that deadline now passed, Plaintiffs submit this final report of the class's reaction to the proposed settlement.

Plaintiffs also wish to apprise the Court of a proposed modification to the settlement. Previously, the settlement offered class members reimbursement for their rear brake pad replacements, but only if original Honda brake pads were used. In response to complaints from class members who had chosen to use aftermarket brake pads, Honda has agreed to extend the settlement benefits so that one aftermarket replacement per class member is covered as well. This added benefit is reflected in an Addendum to the Settlement Agreement, submitted by Honda as Exhibit A to the Affidavit of Roy M. Brisbois. (*See also* Gibbs Suppl. Decl.) If approved by the Court, Honda will notify class members of the additional benefit by postcard. Because the modified settlement is providing more relief than the original settlement, there is no need for an additional objection period or opt-out period before final approval. Those class members who view the settlement as undesirable have already objected or opted out; there is no reason that someone would newly object or opt-out because the settlement now offers *more* relief. Class Counsel have, however, written to those class members who previously chose to opt out of the settlement, informing them of the change to the settlement and giving them the opportunity to opt back in and file a claim. (*See* Stein Suppl. Decl., ¶ 8, Ex. 6.) By the hearing date for final approval, the parties will have a final list of the opt-outs which they can attach to the proposed final class action judgment

1

REPLY IN SUPPORT OF FINAL APPROVAL OF CLASS SETTLEMENT
CASE NO. CV 09-06750-MMM(DTBx)

1 | pursuant to Rule 23(c)(3).

2 | **II.   CLASS REACTION TO THE SETTLEMENT**

3 | The final factor the Court should consider in evaluating a proposed class action
4 | settlement is the reaction of class members.  *Hanlon*, 150 F. 3d at 1025.  Plaintiffs'
5 | opening memorandum analyzed the class reaction to date, and offered a flavor of the
6 | commonly expressed viewpoints.  (*See* 6/21/10 Mem. [Doc. 40] at 8-11, 20; *see also*
7 | 6/21/10 Stein Decl. [Doc. 44].)  In the two weeks that followed, culminating with the
8 | July 5th deadline for class member comments, class member reaction has stayed
9 | consistent.  The final numbers reflect a great deal of interest and support for the
10 | settlement.  Over 33,000 class members have already opted to participate in the
11 | settlement by filing claims for reimbursement of repair expenses.  (*See* Stein Suppl.
12 | Decl., ¶ 6.)  And many others have expressed a desire to participate over the claims
13 | period, during which class members can seek reimbursement for past replacements, or
14 | for future rear brake pad replacements using improved parts.  Roughly 7,000 class
15 | members have called Class Counsel or the Class Administrator about the settlement,
16 | mostly to ask what they need to do to participate.  (*See id.*, ¶¶ 4-5.)  Another 3,800 have
17 | expressed interest in the settlement in writing, either by asking whether and how they can
18 | participate, or by asking to be notified if and when the settlement is approved.  (*See id.*, ¶
19 | 4.)

20 | In contrast, the number of class members who have opted out of the settlement or
21 | objected to its terms is quite low.  Out of 743,559 class members notified of the proposed
22 | settlement, only 505 have opted to exclude themselves from the settlement rather accept
23 | its binding effect.  (*See* Stein Suppl. Decl. ¶ 7.)  Such a low opt-out rate (0.07%) shows
24 | that overall the class considers the settlement to be fair.  *See Garner v. State Farm Mut.*
25 | *Auto. Ins. Co.*, 2010 WL 1687832, *15 (N.D. Cal. 2010) (0.4% opt-out rate "is a further
26 | indication of the fairness of the Settlement"); *see also Mangone v. First USA Bank*, 206
27 | F.R.D. 222, 227 (S.D. Ill. 2001) (finding opt-out rate of only 0.1% indicates
28 | "overwhelming support" and provides "strong circumstantial evidence supporting the

fairness of the Settlement").

The objection rate is even lower, with 105 class members, representing 0.014% of the class, submitting an objection to the proposed settlement. *See, e.g., Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) ("The court had discretion to find a favorable reaction to the settlement among class members given that, of 376,301 putative class members to whom notice of the settlement had been sent, 52,000 submitted claims forms and only fifty-four submitted objections [a 0.014% objection rate]; *Churchill Village, L.L.C. v. General Electric.*, 361 *F*.3d 566, 577 (9th Cir. 2004) (affirming final approval with 45 objections out of 90,000 notices [a 0.05% objection rate].) When the parties' proposed modification to the settlement is taken into account, the objection rate becomes even lower since many of the objections were directed at the lack of compensation for past repairs using aftermarket parts.

Although the low rate of objections is indicative of a fair settlement, the Court should consider the nature of the objections that have been made and "evaluate whether they suggest serious reasons why the settlement proposal might be unfair." *Garner*, 2010 WL 2228531 at *2. Toward that end, Class Counsel has grouped class members' objections into five general categories for the Court's review (*see* Stein Supp. Decl., ¶¶ 9-14, Exs. 1-4), and respond to each of these categories below.

## III. RESPONSE TO OBJECTIONS

### A. Category #1: The Settlement Doesn't Offer Compensation For Repairs Using Aftermarket Parts.

The most frequent concern expressed by class members is that the settlement did not offer reimbursements for rear brake pad replacements using aftermarket parts. Class Counsel have received a total of 47 objections making this point. (*See* Stein Supp. Decl., Ex. 1.) A typical example came from Philip Lancaster of Lookout Mountain, Georgia, who wrote:

> I object to the Settlement insofar as reimbursement for brake pad replacement is limited to replacement with the specified *Honda* brake pads.

> The Settlement should reimburse Class Members for replacement with *any brand* of brake pad.
>
> I was alarmed that I needed new rear brake pads on the 2008 Accord after only 24,000 miles of driving.  Concluding myself that the Honda pads must be defective or inferior in some way, I chose to have a non-Honda repair service replace the pads with a non-Honda brand of pads.
>
> I suffered financial loss as a Member of the Settlement Class.  Why should I be denied the right to a fair financial settlement for my loss simply because I chose another type of brake pad as my replacement.

As discussed in the Introduction above, the parties have agreed to modify the settlement to address concerns of the class members like Mr. Lancaster who opted for aftermarket parts.  (*See* Brisbois Aff., Ex. A; Gibbs Suppl. Decl.)  If approved by the Court, class members will be informed of the added benefit by postcard notice and will be able to submit up to one claim for past repairs using aftermarket parts—as well as for unlimited claims using Honda parts.  The chief objection raised to the class is thus no longer applicable.

### B.     Category #2:  The Settlement Should Offer More Compensation For Past Repairs

Other class member objections are primarily levied at the amount offered in settlement.  (*See* Stein Supp. Decl., Ex. 2.)  To compensate class members for past rear brake pad replacements, Honda is agreeing to pay 50% of class members' out-of-pocket costs, up to a limit of $125 per repair.  Several class members have written that Honda should be required to pay more, with most saying that Honda should pay 100% of their past costs.  One example comes from Chander Singh of Lake Forest, California:

> I am writing to object to the settlement in the above case.  My objection is based on my personal experience with 2 rear brake replacements in my 2008 Honda Accord purchased on December 30, 2007.  The first rear brake change occurred @ 16,698 miles on January 3, 2009.  The second rear brake change occurred @ a 14,613 mile interval on December 21, 2009. …
>
> The expense associated with the repairs was significant.  For the first repair

> I paid $127.40 for labor costs and the brake pads were priced @ 62.55 for a total of **$189.95**. For the second repair job, I paid $62.30 for the brake pads and $137.55 in labor for a total of **$199.95** (see attached invoices and payment record). My costs are well over the $125 per brake job quoted as reimbursement to Class Members. I believe reimbursement should cover all expenses incurred by the class member for a manufacturing defect Honda fails to acknowledge.

In evaluating the fairness of the 50% offered for past repairs, however, class members who want more relief tend to overlook two important points. The first is that even if the original rear brake pads installed in Class Vehicles lasted as long as the preceding generation of 2003-2007 Honda Accords, class members would still have to pay for rear brake pad replacements—just not as often. For example, as Class Counsel explained in their opening brief, under the settlement, class members who replaced their rear brake pads at about 25,000 miles actually ended up in a more favorable position economically. (*See* 6/21/10 Mem. [Doc. 40] at 17-18 (discussing the experience of Patricia K. and Lynn W.).) Similarly, if Mr. Singh's rear brake pads did not wear out prematurely, but instead lasted about 50,000 miles, he would find himself in a very similar position to where he will end up under the proposed settlement. In the hypothetical case, he would have a vehicle with 50,000 miles and new brake pads, and he would be out of pocket for about $195 (the cost of the one rear brake pad replacement at 50,000 miles). As matters actually stand, Mr. Singh had two rear brake pad replacements and will likely need a third at about 50,000 miles. But under the settlement, he will receive a $195 reimbursement for his first two replacements and a $150 reimbursement for his next replacement, at which time he will receive improved brake pads that will alleviate the need for such frequent brake pad replacements in the future. After that repair, Mr. Singh's 2008 Honda Accord will have about 50,000 miles and new brake pads that can be expected to last at least as long as the previous generation of 2003-2007 Honda Accords, and Mr. Singh will be out a total of about $240. So while Class Counsel understand Mr. Singh's and other class members' requests for a higher percentage

reimbursement, the settlement places class members close to where they would be were it not for Honda's alleged wrongful conduct, and so cannot be deemed an unfair compromise.

The second point that is easy for class members to overlook, but must ultimately be taken into account by Class Counsel in negotiations and by the Court at the approval stage, is that settlements involve trade-offs. *See Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982) ("the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'") Rather than waiting to receive *any* compensation from Honda, during which time class members would have to pay for more and more brake pad replacements, the settlement negotiated by Class Counsel offers the class immediate compensation without the risk and delay associated with further litigation—and class members like Mr. Singh are not being asked to surrender much in the way of a discount to achieve that result. *See Jaffe v. Morgan Stanley & Co.*, 2008 WL 346417, *9 (N.D. Cal. 2008) ("a sizeable discount is to be expected in exchange for avoiding the uncertainties, risks, and costs that come with litigating a case to trial.") Some class members inevitably will not be satisfied with anything less than a full refund, but while that reaction is understandable it does not render the compromise before the Court unfair. *See Browning v. Yahoo! Inc.*, 2007 WL 4105971, *5 (N.D. Cal. 2007) ("[S]ome objectors complain that they should get a full cash refund. This is tantamount to complaining that the settlement should be 'better,' which is not a valid objection. [*Hanlon*, 150 F.3d at 1027.] It also fails to recognize that settlement, as a product of compromise, typically offers less than a full recovery.")

One final point regarding the compensation offered for past repairs is that it *does* cover out-of-pocket expenses for brake rotor resurfacing and caliper adjustments performed in connection with a rear brake pad replacement. (*See* Settlement Agreement [Doc. 42, Ex. 1], (I)(26), (31), (III)(A)(1).) Some of the class members who objected to the settlement amounts are under the misimpression that they will not receive

reimbursement for the portion of their repair expense associated with rotor resurfacing, but instead will only receive reimbursement for the portion associated with installing the actual brake pads. These class members will not be so limited, they will receive 50% of their entire repair expense, up to a cap of $125. The settlement should also spare many class members from having to pay for future rotor resurfacing: Honda has issued a Service News Article emphasizing to repair technicians that rotor resurfacing "should be rare."

### C. Category #3: Concerns About Future Brake Pad Wear

The remaining categories of objections were expressed by far fewer class members than the first two categories. For instance, a handful of class members are concerned about future brake pad wear. (*See* Stein Supp. Decl., Ex. 3.) Some, like John Danielson, do not realize that when they next take their vehicles in for a rear brake pad replacement, they will receive more durable brake pads that will alleviate premature brake pad wear (and will also be entitled to a reimbursement of up to $150 for the installation of these improved pads). Others, like Frank Wood, are unconvinced that the improved brake pads will solve the problem. They think that the problem is something else—such as the brake rotor metallurgy, an engineering flaw, the design of the cooling vents, or the calipers—and that premature brake pad wear will continue to occur even with the new material brake pads.

Honda's testing data shows that its new rear brake pad kit and installation procedure, which includes a mechanical adjustment to the vehicles' calipers, should allow the rear brake pads to last as long as the brake pads in 2003-2007 Honda Accords. Working with their experts, Class Counsel have conducted confirmatory discovery into both Honda's fix and its wear test results of that fix. (*See* 6/21/10 Gibbs/Berk Decl. [Doc. 42], ¶ 22.) They have found no reason to believe Honda's test results are not valid or that the improved brake pads will not alleviate premature rear brake pad wear.

### D. Category #4: Class Members With Low Mileages Are Treated Unfairly

Another relatively isolated category of objections comes from class members who

7

REPLY IN SUPPORT OF FINAL APPROVAL OF CLASS SETTLEMENT
CASE NO. CV 09-06750-MMM(DTBx)

are concerned that, to use Mary Lombardo's words, the Settlement "unfairly disadvantages purchasers of the subject vehicles who, for whatever reason, have driven those vehicles fewer miles." (*See* Stein Supp. Decl., Ex. 4.) As Ms. Lombardo explains, "Premature rear braking system wear would still occur, resulting in the need for otherwise unnecessary repair/replacement but not likely within the proposed settlement's time frame," which is 3 years from when the vehicle was first sold (or within 90 days of final approval, whichever is later).

Those class members, like Ms. Lombardo, who have not replaced their rear brake pads are fortunate in the sense that they have not incurred out-of-pocket expenses as a result of premature brake pad wear. Under the settlement, they can now take their vehicle in for improved brake pads and receive a prompt reimbursement for the expense—in essence foreclosing any unnecessary out-of-pocket expenses before they occur. The only limitation for these class members is that they will have to have the improved brake pads installed within 3 years of when the vehicle was first sold. Ms. Lombardo is right that for those who drive very little, or who for whatever reason are not affected by premature break pad wear, their old brake pads may not have failed by that time. The choice for these class members, then, is to take their vehicle in for more durable brake pads before the 3-year deadline (even though their vehicle may not quite need it yet) or to forego the $150 brake pad reimbursement made available by the settlement and wait until their existing brake pads finally do wear out.

Installing new brake pads before the old ones are completely worn out may pose a minor inconvenience, but the 3-year limitation imposed by the settlement is not arbitrary or unfair. Honda's 3-year express warranty for its Accord vehicles is at the heart of the class's legal claims for reimbursement from Honda. If the rear brake pads last more than 3 years, for whatever reason, the replacement would occur outside of warranty and class members' claims would be far weaker. *See Daugherty v. American Honda Motor Co.*, 144 Cal. App. 4th 824 (2006) (dismissing warranty and consumer protection claims where the alleged defect first manifested outside of Honda's 3-year/36,000-mile

warranty period). The three-year limitation on the settlement follows from that legal reality, and while it may force infrequent drivers to make a choice between changing their brake pads early or forego the settlement's brake pad reimbursement, it does not render the settlement unfair.

### E. Category #5: Class Members Shouldn't Have To Advance The Cost of Installing the New Material Pads and Wait For a Refund

The final category of objections raised by some class members concerns the claims process. (*See* Stein Supp. Decl., Ex. 5.) Rather than paying up-front for the new brake pads and submitting a claim for reimbursement from Honda, these class members object that they should receive the new brake pads free of cost. Class Counsel certainly sympathize with this objection; as the Court knows, they worked hard to negotiate a settlement that would require no up-front cost from class members for the improved brake pads. Ultimately, Honda was not willing to agree to such a settlement, pointing out that Honda and Acura dealerships are independent entities and that it would be logistically difficult to monitor and approve the installation of free or discounted rear brake pads at the dealership level. With the Court's assistance, however, Class Counsel was able to negotiate a settlement that places as few impediments as possible between class members and settlement payments. The process is designed to be fast and convenient, featuring a single-page claim form and a 10-day turnaround for repayment. This process reflects a reasonable compromise and fair way to deliver settlement benefits to the class.

### IV. CLASS REACTION TO THE CLASS COUNSEL'S REQUEST FOR ATTORNEY FEES.

The settlement notice sent to 743,559 class members stated that Class Counsel would request that the Court award them up to $2 million in attorney fees and expenses, as compensation for their services to the class. Only one of those class members have objected to Class Counsel' fee request. (*See* Suppl. Stein Decl., ¶ 15.) On the other hand, a number of class members have written to Class Counsel thanking them for their

9

REPLY IN SUPPORT OF FINAL APPROVAL OF CLASS SETTLEMENT
CASE NO. CV 09-06750-MMM(DTBx)

1  efforts and many others who called Class Counsel with questions about the settlement
2  have also expressed their appreciation.  (*See id.*)
3       The one class member objection came from Robert Burkhart of Canonsburg,
4  Pennsylvania, who wrote:

> I believe the manner in which the Class Counsel is to be paid is counterproductive and is a disincentive to get the affected consumers what they really deserve.  I suggest the counsel get compensated a percentage of what Honda has to pay out to the poor unsuspecting consumer of a product that was once considered a quality product.  The more the people get what they deserve, the more compensation for counsel.

(*See id.*, Ex. 4, Burkhart Objection, p. 5 of 10.)  In other words, Mr. Burkhart urges the Court to calculate Class Counsel's fees using a percentage-based method rather than an hours-based method.

   Technically, the Court isn't calculating a fee award at all, but rather determining whether the amount agreed to by the parties in settlement of Class Counsel's fee claim is reasonable.  *See Staton v. Boeing Co.*, 327 F.3d 938, 963-64 (9th Cir. 2003).  In making that determination, though, the Court should assess the possible range of fees that could be awarded under the statute that gives rise to that fee claim.  *See id.* at 966.  The primary method for calculating fees under the California fee-shifting statute that applies here is an hours-based approach, referred to as the lodestar method.  *See Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 26 (2000).  Class Counsel showed in their fee application that under the lodestar method, the parties' agreed-upon $2 million fee is well within the range that could be awarded were this a contested fee motion.  (*See* 6/21/10 Fee Mem. [Doc. 46] at 5-18.)

   The agree-upon fee is also well within the range that could be awarded under the less favored percentage-based method advocated by Mr. Burkhart.  Under that method, attorney fees are calculated as a percentage of the amount recovered by the class.  The goal is to approximate the 20 to 40 percent range of contingency fee contracts found in the market place.  *See Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 65 (2008); *see also*

1 *Hanlon*, 150 F.3d at 1029 (the Ninth Circuit uses 25% as a benchmark award for attorney
2 fees calculated under the federal common fund doctrine).  While it is hard to say so early
3 in the 3-year claims period what the total payout to the class will be, it is well on its way
4 to exceeding $10 million.  The $2 million fee award agreed to by the parties will
5 therefore fall under, and likely well under, the range of fees that could have been
6 awarded to Class Counsel were this a contested fee motion and the Court chose to apply
7 the percentage method advocated by Mr. Burkhart.

## V.   CONCLUSION

In light of the class's overall reaction to the settlement, which reflects a high degree of interest and a low rate of opt outs and objections, the final *Hanlon* factor weighs in favor of final approval.  The nature of the objections analyzed above show that while not completely satisfying everyone, the proposed settlement addresses a difficult situation in a meaningful way.  The settlement is a fair, adequate, and reasonable compromise of the class's claims against Honda and should be approved.

DATED: July 12, 2010                        Respectfully submitted,

**GIRARD GIBBS LLP**

By:   /s/ Eric H. Gibbs

Dylan Hughes
Geoffrey A. Munroe
601 California Street, Suite 1400
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

Steven N. Berk
Michael Lewis
**BERK LAW PLLC**
1225 Fifteenth St. NW
Washington, DC 20005
Phone: (202) 232-7550
Facsimile: (202) 232-7556

*Attorneys for Individual and Representative
Plaintiffs Vanessa Browne and Paul Moore*